### In re Peter D. BARSHAK.

### Civ. A. No. 95–5751.

United States District Court, E.D. Pennsylvania.

May 2, 1996.

Jay G. Ochroch, Susan B. Naftulin, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for Peter D. Barshak.

D. Ethan Jeffery, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA, for Christine C. Shubert, Trustee.

Frederick J. Baker, U.S. Trustee, U.S. Department of Justice, Philadelphia, PA.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

From 1974 to 1989, Peter D. Barshak was an employee of Consolidated Printing, Inc. ("Consolidated"). During that period, Consolidated made contributions on his behalf into an ERISA qualified employee benefit plan ("the Plan") which qualified for preferred tax treatment under § 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a). The employee benefit plan took the form of a stock ownership plan; as described in the employee handbook, a principal purpose of the plan was to provide for the retirement of Consolidated's employees. *See* Employee Handbook at 11–16, Exh. A to Brief of Appellant. Barshak ceased to work for Consolidated in December 1989. On September 21, 1992, Barshak received a check for $71,134.75 from the Plan. Some nine days later, on September 30, 1992, Barshak deposited these funds into his Individual Retirement Account ("IRA"). This represented his only contribution to his IRA in that year.

Barshak subsequently filed for bankruptcy, and asserted that the $71,134.75 check was exempt from his bankruptcy estate. The Trustee contested this claim. Barshak and the Trustee submitted the matter for decision by the Bankruptcy Court on the basis of an agreed stipulation of facts, whose relevant elements are summarized above. On August 7, 1995, the Bankruptcy Court found that Barshak was entitled to claim exemption for only $15,000 of the transferred funds, and that $56,134.75 was nonexempt. This appeal followed.[1]

█ The provision governing exemptions for contributions to retirement accounts is 42 Pa.C.S.A. § 8124(b), which provides in pertinent part:

(b) Retirement funds and accounts. —

(1) Except as provided in paragraph (2), the following money or other property of the judgment debtor shall be exempt from attachment or execution on a judgment:

.    .    .    .    .

1. This court has jurisdiction to hear Barshak's appeal under 28 U.S.C. § 158(a).

(ix) Any retirement or annuity fund provided for under section 401(a), 403(a) and (b), 408 or 409 of the Internal Revenue Code of 1986 (Public Law 99–514, 26 U.S.C. § 401(a), 403(a) and (b), 408 or 409), the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder. This subparagraph shall not apply to:

(A) Amounts contributed by the debtor to the retirement or annuity fund within one year before the debtor filed for bankruptcy.

(B) Amounts contributed by the debtor to the retirement or annuity fund in excess of $15,000 within a one-year period.

(C) Amounts deemed to be fraudulent conveyances.

42 Pa.C.S.A. § 8124(b). The Bankruptcy Court found that Barshak's IRA is "provided for" under section 408 of the Internal Revenue Code, and so would ordinarily qualify for an exemption. However, the court found, the "plain language" of § 8124(b)(1)(ix)(B) precludes Barshak from claiming an exemption for more than $15,000 of the $71,134.75 transaction, because the $71,134.75 was an amount contributed "by the debtor" to his "retirement or annuity fund" in a single year. This is the finding that Barshak contests on appeal.

The word "contributed" in § 8124(b)(1)(ix)(B) is subject to two interpretations. Under a broad interpretation, *any* transaction in which a debtor adds money to a retirement or annuity fund is a "contribution" by that debtor. This was the sense in which the word seems to have been read by the Bankruptcy Court. This reading has some unusual implications. It would seem to suggest that if, for instance, a fund erroneously disbursed more money to a debtor than intended, and the debtor returned the excess to the fund, the second transaction would

constitute a "contribution," because it would be an addition of money into the fund.

■ Another sense of the word "contributed" is somewhat narrower. In this interpretation, a transaction is a "contribution" if it transforms assets from ordinary assets to retirement assets. This reading would render it permissible for assets that had once acquired the status of retirement assets to later pass briefly through the hands of the debtor, if they did so in a way that did not raise serious doubts as to whether they remained retirement assets. Under this reading, then, neither the return of an erroneous disbursement nor the transaction at issue in the present case would be a "contribution," because in both transactions the assets involved would already have been designated as retirement assets and neither transaction would have called that status into doubt.

I find that the latter interpretation is the more natural and appropriate one. That reading better captures the sense of the word "contribute," which usually refers to a meaningful change in an asset's status or ownership. Had the legislature meant to capture all transactions, it could have used another word, like "transfer." The second reading also avoids the anomaly of allowing funds that have already been counted as "contributed" once, in the year in which they were first designated as retirement assets, to then be treated as having been "contributed" a second (or indeed a third or fourth) time.[2]

■ The second interpretation also better reflects the purposes of the statute. § 8124(b)(1)(ix) is intended to protect an individual's retirement income in bankruptcy proceedings. *See In re Houck*, 181 B.R. 187, 193 (E.D.Pa.1995) ("[T]he Pennsylvania legislature has made a policy decision that, for purposes of state law, IRAs should be insulated from involuntary alienation via a creditor's execution."). Accordingly, § 8124(b)(1)(ix)(B) expresses a policy of al-

---

2. The second interpretation also avoids a further anomaly. In the present case, Barshak apparently received a second disbursement of retirement funds, in the amount of $3,887.16, from Consolidated. This disbursement was made directly to his IRA. The Trustee did not seek to contest Barshak's claim that he was entitled to

an exemption for these funds; because the contribution was made by Consolidated, and therefore not "by the debtor," such a challenge would very likely have failed. It would certainly be curious if Barshak's entitlement to an exemption turned on whether the funds involved passed through his hands before entering his IRA.

lowing individuals to redesignate a fairly substantial, but finite, amount of their income as retirement assets in any given year. The underlying policy would seem to be one of balancing the Commonwealth's interest in allowing individuals to make reasonable provision for their retirement against the interest of creditors in obtaining recovery. A rule that penalized debtors for transferring funds from one account to another would not seem to serve this policy. Instead, it would impose an arbitrary limitation on one class of debtors, those who, for whatever reason, must shift retirement funds between accounts.[3]

I also note that § 8124(b)(ix) cites to the Internal Revenue Code, 26 U.S.C. §§ 401(a), 403(a), 403(b), 408, and 409, for its definition of the retirement and annuity funds that are eligible for exemption. The Internal Revenue Code permits an individual to exclude a distribution from an employee trust account from gross income for tax purposes if the distribution is transferred within sixty days to another qualified retirement account, such as an IRA. *See* 26 U.S.C. § 402(a)(5), § 408(d)(3). Such a transfer is called a "rollover."

The Bankruptcy Court found that this citation to the Internal Revenue Code demonstrated that the Pennsylvania Legislature was aware of the possibility of rollovers, and consciously chose not to permit them. Further, it cited to a provision of the Pennsylvania administrative code, 61 Pa.Code § 101.6(c)(8)(III), which subjects rollovers to tax treatment similar to that under federal law, and found that the latter provision indicated that the Legislature "knew how to and chose not to do so in Pennsylvania's exemp-

tion statute." Bankruptcy Court Opinion at 8.[4]

Legislative silences are subject to multiple interpretations, and the Bankruptcy Court's arguments are not without force. However, in the face of an ambiguous statutory text and the likely difficulty of anticipating the rollover problem, I cannot conclude that the Legislature's failure to specifically address the rollover problem demonstrates an intent to exclude rolled-over funds from the protection of § 8124(b)(ix), particularly since such an intent would be in conflict with the legislature's other purposes in enacting the statute.[5] Accordingly, I will reverse the decision of the Bankruptcy Court, and remand this matter to that court for further proceedings consistent with this opinion.[6]

An appropriate order follows.

## ORDER

For the reasons set forth in the memorandum filed herewith, it is hereby ORDERED that the appealed order of the Bankruptcy Court is REVERSED, and that this case is remanded to the Bankruptcy Court for further proceedings consistent with that memorandum.

**3.** To the extent that the underlying concern might be that a debtor would shift funds between accounts for some improper purpose, this concern would appear to be adequately addressed by § 8124(b)(1)(ix)(C), which prevents transactions from being exempted to the extent that they constitute fraudulent conveyances.

**4.** The Bankruptcy Court's opinion did not elaborate on which circumstances rendered an administrative regulation relevant to a question of legislative intent. There are certainly, however, some circumstances that could justify such a link.

**5.** It also seems fair to assume that, if the Pennsylvania legislature had intended to depart from the federal scheme, it would have said so more explicitly in order to avoid penalizing persons who might perform rollovers in reliance on their rights under federal tax law.

**6.** Barshak had argued on appeal that, because the original contributions to his retirement fund had been made by his employer, the funds were not "contributed by the debtor." Because I find that the Bankruptcy Court's interpretation of the word "contributed" was incorrect, I will not reach this argument.