

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-10-1997

# In Re: Peter Barshak v.

Precedential or Non-Precedential:

Docket 96-1423

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"In Re: Peter Barshak v." (1997). *1997 Decisions*. Paper 35.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/35

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 96-1423
_____

IN RE:  PETER D. BARSHAK,

Debtor

Christine Shubert, Esquire, duly qualified and
acting Chapter 7 Trustee,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 95-05751)
_____

Argued January 6, 1997

BEFORE:  GREENBERG, COWEN, and ALITO, Circuit Judges

(Filed: February 10, 1997)
_____

Jay G. Ochroch (argued)
Susan B. Naftulin
Fox, Rothschild, O'Brien &
Frankel
2000 Market Street
10th Floor
Philadelphia, PA 19103

Attorneys for Appellee

D. Ethan Jeffrey
Albert A. Ciardi, III (argued)
Ciardi, Maschmeyer & Karalis
1900 Spruce Street
Philadelphia, PA 19103

Attorneys for Appellant
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

# I. BACKGROUND

Appellant, Christine Shubert, Chapter 7 trustee of the bankruptcy estate of appellee, Peter D. Barshak, appeals from a final order entered by the district court in this bankruptcy case involving a claim by Barshak that his Individual Retirement Account ("IRA") is exempt from inclusion in the estate. Shubert objected under Pennsylvania law to Barshak's claim of exemption, and the bankruptcy court upheld her objection. In re Barshak, 185 B.R. 210 (Bankr. E.D. Pa. 1995) ("Barshak I"). Barshak then appealed and the district court reversed. In re Barshak, 195 B.R. 321 (E.D. Pa. 1996) ("Barshak II"). We will reverse the order of the district court and reinstate the order of the bankruptcy court upholding Shubert's objection to the exemption.

The facts are not disputed. From 1974 to 1989 Consolidated Printing, Inc. employed Barshak. During that period it made contributions on his behalf into an ERISA employee benefit plan which qualified for favorable tax treatment under section 401(a) of the Internal Revenue Code. 26 U.S.C. § 401(a). The plan had a principal purpose of providing funds for Consolidated's employees' retirement. Barshak's employment at Consolidated ended in December 1989. On September 21, 1992, Barshak received a check for $71,134.75 from the plan which he deposited in his personal bank account. On September 30, 1992, Barshak wrote a check for $71,134.75 on his personal bank account which he deposited into his IRA. While the record does not disclose either whether Barshak commingled the $71,134.75 with

2

other funds or whether Barshak wrote checks against his personal bank account after the deposit of the $71,134.75 into the account before he paid the $71,134.75 into his IRA, the parties have stipulated that Barshak deposited the money from the Consolidated plan into the IRA and we thus decide the case on that basis. In June 1993, the Consolidated plan made an additional distribution to Barshak of $3,887.16 which it paid directly into Barshak's IRA at his direction.

On December 30, 1994, Barshak filed a petition for relief under Chapter 7 of the Bankruptcy Code. In his Schedules and Statements of Financial Affairs, Barshak, as allowed by 11 U.S.C. § 522(b), claimed his exemptions available under Pennsylvania law, including an exemption from inclusion in his bankruptcy estate of the IRA pursuant to 42 Pa. Cons. Stat. Ann. § 8124 (Supp. 1996) ("section 8124"). In accordance with a limitation in section 8124 on the amount of contributions to an IRA plan that could be exempted, Shubert challenged Barshak's claim of the IRA exemption to the extent that the IRA included contributions exceeding $15,000 in any one year. Thus, she asserted that $56,134.75 of the $71,134.75 which Barshak contributed in 1992 should not be exempt. Shubert, however, did not challenge Barshak's claim for exemption of the 1993 contribution of $3,887.16 to the IRA.

The bankruptcy court decided the case in an opinion of August 7, 1995. The court set forth the above facts and added that Consolidated in no one year contributed in excess of $15,000 on Barshak's behalf to its plan. Barshak I, 185 B.R. at 211.

3

The bankruptcy court indicated that section 8124(b)(1)(ix) provides for an exemption from execution or attachment of "[a]ny retirement or annuity fund provided for under section 401(a), 403(a) and (b), 408 or 409 of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 401(a), 403(a) and (b), 408 or 409), the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder." Id. The bankruptcy court noted, however, that the foregoing exemption provision "shall not apply to . . . [a]mounts contributed by the debtor to the retirement or annuity fund in excess of $15,000 within a one-year period." Id. (quoting section 8124(b)(1)(ix)(B) ("subsection B")). It then noted that Shubert did not claim that the IRA did not come within the sections of the Internal Revenue Code enumerated in the exemption provision. Id.

Barshak argued that the $71,134.75 placed in the IRA was a rollover from the Consolidated plan and thus the court should not regard it as a contribution to the IRA subject to the $15,000 yearly limitation on the exemption. Id. In response, Shubert argued that the plain meaning of subsection B required the court to deny the exemption for contributions in excess of $15,000 in one year. Id. Thus, $56,134.75 should not be exempt. Shubert recognized, however, that property exempt from attachment and execution is excluded from a bankruptcy estate. Br. at 9. In view of the parties' contentions, the bankruptcy court stated that the "sole issue for [it] to determine is whether [Barshak's] deposit of $71,134.75 in funds from an ERISA

4

qualified plan into an IRA is a 'contribution' subject to the $15,000 limitation in [subsection B]." Id.

The bankruptcy court was impressed with In re Goldman, 182 B.R. 622 (Bankr. D. Mass. 1995), aff'd, 192 B.R. 1 (D. Mass. 1996). In Goldman the debtor directed that his interest in a terminated ERISA plan be transferred to his IRA. In re Goldman, 182 B.R. at 623. Under the applicable Massachusetts law, IRAs are exempt from insolvency proceedings and from execution and attachment, subject to a statutory limitation on the amount of deposits that can be exempted. Id. The debtor in Goldman argued that the limitation should not apply as his transfer was nothing more than a conversion of funds from one exempt retirement account to another exempt retirement account. Id. at 624. The bankruptcy court in Goldman rejected that argument because, while Massachusetts law did allow certain rollovers to preserve an exempt status, none applied in the circumstances in that case under the applicable statute as written. Id. at 625. Here the bankruptcy court agreed with Goldman that it must look at the plain language of the exemption statute to decide if the limitation on the exemption was applicable. Barshak I, 185 B.R. at 212–13.

Barshak requested the bankruptcy court to distinguish between "rollover contributions" and "contributions" and to apply the limitation on contributions free from attachment and execution in subsection B only to "contributions." Id. at 213. Barshak supported this contention by pointing out that both federal and Pennsylvania law accord favorable tax treatment to

5

"rollover contributions." Id. The bankruptcy court rejected Barshak's request because it viewed the "plain language" of subsection B as requiring that it do so. Id. The bankruptcy court regarded the favorable tax treatment of rollover contributions as immaterial to resolution of the issue before it. Furthermore, it pointed out that the fact "that the Pennsylvania legislature decided to and did create . . . a distinction [between rollover contributions and contributions] in another statute, indicate[d] that it knew how to [make that distinction] and chose not to do so in" subsection B. Id. Consequently, the court entered an order on August 9, 1995, sustaining Shubert's objection and denying Barshak's exemption in his IRA to the extent of $56,134.75.[1]

Barshak then appealed to the district court which decided the case in its opinion of May 2, 1996. That court said that "contribution" in subsection B "is subject to two interpretations." Barshak II, 195 B.R. at 323. It explained these interpretations as follows:

> Under a broad interpretation, any transaction in which a debtor adds money to a retirement or annuity fund is a 'contribution' by that debtor. This was the sense in which the word seems to have been read by the Bankruptcy Court. This reading has some unusual implications. It would seem to suggest that if, for instance, a fund erroneously disbursed more money to a debtor than intended, and the debtor returned the excess to the fund, the second transaction would constitute a 'contribution,' because it would be an addition of money into the fund.

---

1.    The bankruptcy court in its order did not address the appreciation and income, if any, on the amount of the exemption it denied and thus we do not consider that point.

6

Another sense of the word 'contributed' is somewhat narrower. In this interpretation, a transaction is a 'contribution' if it transforms assets from ordinary assets to retirement assets. This reading would render it permissible for assets that had once acquired the status of retirement assets to later pass briefly through the hands of the debtor, if they did so in a way that did not raise serious doubts as to whether they remained retirement assets. Under this reading, then, neither the return of an erroneous disbursement nor the transaction at issue in the present case would be a 'contribution,' because in both transactions the assets involved would already have been designated as retirement assets and neither transaction would have called that status into doubt.

Id.

The court indicated that it found the "latter interpretation" of "contributed," i.e., a transaction which "transform assets from ordinary assets to retirement assets" "the more natural and appropriate one." Id. It found that this "reading better captures the sense of the word 'contribute,' which usually refers to a meaningful change in an asset's status or ownership." Id. It also thought that if the legislature intended to use "contributed" in the broad sense, it would have used a different word like "transfer" and that the broad interpretation would allow an asset to be contributed more than once as the same asset could be put in one retirement fund and later moved to another. Id.

The district court also thought that the narrower interpretation "better reflects the purpose[ ]" of section 8124 which it pointed out "is intended to protect an individual's

7

retirement income in bankruptcy proceedings." Id. In this regard it quoted In re Houck, 181 B.R. 187, 193 (Bankr. E.D. Pa. 1995), which stated that: "[T]he Pennsylvania legislature has made a policy decision that, for purposes of state law, IRAs should be insulated from involuntary alienation via a creditor's execution." The district court indicated that the legislature intended that individuals could designate a substantial but finite amount of income as retirement income each year and that a rule penalizing debtors for transferring funds from one account to another would not seem to serve this policy. Barshak II, 195 B.R. at 324. The district court found that such a rule would impose an arbitrary limitation on one class of debtors who "must shift retirement funds between accounts." Id.

The district court noted that the Internal Revenue Code "permits an individual to exclude a [rollover] from an employee trust account from gross income for tax purposes if the distribution is transferred within sixty days to another qualified retirement account, such as an IRA." Id. See 26 U.S.C. §§ 402(a)(5), 408(d)(3). While the district court recognized that the legislature was aware of rollovers and did not exclude them from the $15,000 limitation of subsection B, it concluded that it could draw no inferences from this omission. Barshak II, 195 B.R. at 324. In view of its conclusions, the district court entered an order on May 9, 1996, reversing the order of the bankruptcy court. Shubert then appealed.

II. DISCUSSION

8

Shubert's argument on this appeal is not complicated. She contends that the plain language of subsection B requires that we reverse the order of the district court as, in her view, it is perfectly clear that Barshak contributed $71,134.75 to the IRA in a one-year period. Indeed, he made the contribution at one time and in one lump sum. Barshak counters that subsection B "cannot be adequately interpreted by examining only the word 'contributed,'" that there is no case law which is instructive with respect to the meaning of subsection B, and that "equitable considerations weigh in support of upholding the district court decision." Br. at i. We exercise plenary review as we are deciding the case through the application of legal precepts.

We will reverse. Subsection B is straightforward. It provides that the exemption from attachment and execution (and thus exemption from inclusion in a debtor's bankruptcy estate) "shall not apply" to amounts "contributed" by the debtor to a retirement fund in excess of $15,000 in a one-year period. When the Consolidated plan disbursed the $71,134.75 to Barshak, he was free to use the money as he saw fit. While Barshak argues that it was Consolidated which contributed the money, its contributions were into its own plan. Certainly, at least no later than when the Consolidated plan disbursed the $71,134.75 to Barshak, the money was his, free of any claim of either Consolidated or its plan. Thus, when Barshak placed the money in the IRA he contributed the money to the IRA as much as if he had placed currently earned income in the IRA. We reiterate that no law required him to place the money in his IRA or any other

9

qualified retirement plan, though there were significant tax considerations encouraging him to do so. See Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville, 16 F.3d 52, 55-56 (3d Cir. 1994); Velis v. Kardanis, 949 F.2d 78, 81-82 (3d Cir. 1991). Furthermore, subsection B simply does not distinguish between "rollover contributions" and "contributions" as it places the limitation of the exemption on amounts "contributed." It would be a pure judicial construct to exclude "rollover contributions" from subsection B, and we will not engage in that process.

Barshak asserts that when the distribution of the $71,134.75 was made: "IRS regulations provided that payments from an ERISA qualified employee benefit plan could be made directly to the individual beneficiary, even if the intent of the beneficiary were to roll the funds over into the IRA." Br. at 14. He then indicates that when the plan disbursed the $3,887.16 the following year the money was paid directly from Consolidated's plan into the IRA "because IRS regulations had changed in the intervening time." Id. He thus suggests that he "is left to wonder if the technical change in the IRS regulations had occurred a year earlier, whether the Rollover Contribution issue would be before this Court at all." Id.

We gather from these observations that Barshak believes that if the Consolidated plan had paid the $71,134.75 directly into the IRA the $15,000 limitation in subsection B would be inapplicable. Of course, we cannot rule on that hypothetical possibility. We do note, however, that we doubt that the result

10

would have been different in that circumstance provided that Barshak could have required the plan to disburse the $71,134.75 directly to him rather than to the IRA and provided further that he then could have used the money as he desired. We think the determinative facts in this case are that Barshak owned the $71,134.75 and could use that money as he saw fit. Consequently, in substance if the Consolidated plan paid the $71,134.75 directly to the IRA at Barshak's direction, the case would be the same as it is now. Furthermore, as we explain below, the subsection B limitation probably would have applied even if Barshak could not have exercised dominion over the $71,134.75 when it was transferred from the Consolidated plan to the IRA because the transfer would have changed the status of the money so that the transfer would have been a contribution to the IRA.

We reject the district court's contrary reasoning. As we have indicated, that court thought that what it termed "a broad interpretation" of subsection B could have "some unusual implications" as it would suggest that if "a fund erroneously disbursed more money to a debtor than intended, and the debtor returned the excess to the fund, the second transaction would constitute a 'contribution,' because it would be an addition of money into the fund." Barshak II, 195 B.R. at 323. We, however, doubt that the return of the money in these circumstances would be a contribution as the repayment merely would be a reversal of an erroneous transaction that would place the fund in the same position it would have occupied if no error occurred. On the other hand, Barshak's transfer of the $71,134.75 did not restore

money to the IRA and thus place it in the position it had been before it made the error. Rather, the contribution enhanced the IRA by $71,134.75.

We also note that if a fund erroneously disbursed money to a beneficiary, the beneficiary might become indebted to the fund for the amount of the disbursement. In such a circumstance, a return of the money hardly would be a contribution to the fund. It would be the payment of a debt which merely would convert an asset the fund already owned, an account receivable, into cash. The circumstances here are different because Barshak's payment was voluntary and added a new asset to the IRA. Overall, while we cannot make a definitive ruling on the point, we think that the "broad interpretation" of subsection B would not have the "unusual implications" which the district court foresaw.

The district court also believed that "contribute" suggests a change in an asset's "status or ownership," circumstances it apparently thought were absent here. We have problems with this observation. To start with when the Consolidated plan disbursed the $71,134.75 to Barshak there was a change in the status of the money as at that time it came under his control and there were no restrictions on its use. Furthermore, under Patterson v. Shumate, 504 U.S. 753, 112 S.Ct. 2242 (1992), the $71,134.75 while in the Consolidated plan would not have been a portion of Barshak's bankruptcy estate as a matter of federal law, a protection that Barshak does not even claim survived after the Consolidated plan disbursed the money.

12

See In re Yuhas, No. 96-5146, slip op. at 4 (3d Cir. Jan. 22, 1997).

Moreover, even if we ignore the transfer of the money to Barshak and treat the transfer as if it were directly from the plan to the IRA, there was a change in the status of the money after the plan disbursed it. Aside from its loss of protection of the money under federal law from inclusion in Barshak's estate, there can be no doubt that the management and the terms of the plan differed from those of the IRA. For example, as Patterson v. Shumate points out, an ERISA plan qualifying for favorable tax treatment under the Internal Revenue Code must include an antialienation provision not required for IRAs. Id. at 762-63, 112 S.Ct. at 2249. The antialientation provision affects assignments unrelated to bankruptcy proceedings. Thus, although there are favorable tax advantages in both qualified employee benefits plans and IRAs and both serve to secure money for retirement, the status of an asset changes dramatically when it is shifted from a qualified ERISA plan to an IRA.[2] Consequently, if a change in status signals that a transfer is a contribution that signal is present here.

There is a second difficulty with the district court's belief that a change in "ownership" of an asset is an indication

---

2.    Shubert might have been able to argue successfully that the $3,887.16 which the Consolidated plan paid directly to the IRA was not exempt as it could be combined with the $71,134.75 contributed to the IRA for purposes of subsection B as the payments were made within a one-year period. But we do not address that possibility as she does not challenge the exemption of the $3,887.16 from the bankruptcy estate.

13

that a transfer of money into an IRA is a contribution.  Surely a person making a contribution to an IRA ordinarily will be placing his or her own money into the IRA so there will be no change in ownership of the money when the contribution is made.  Rather, there will be a change in how the money is held.  Thus, if a transfer to an IRA must reflect a change of ownership to be a contribution, then a person making a transfer to an IRA rarely, if ever, would be making a contribution to the IRA and the subsection B limitation on exemption from attachment and execution would be meaningless.

In reaching our result we acknowledge that a reasonable argument can be made that the outcome in the district court is consistent with the general policy reflected in section 8124 to exempt retirement funds from attachment and execution.  Furthermore, it plausibly could be argued that that outcome does not frustrate subsection B's limitation on the exemption, since the $71,134.75 was accumulated in yearly increments of less than $15,000.  But even if this policy argument were well-founded, a point on which we express no opinion, the plain language of subsection B compels us to reach our result.  We are not free to ignore the clear language of a Pennsylvania statute merely because by rewriting the statute we arguably would act consistently with a legislative policy.  1 Pa. Cons. Stat. Ann. § 1921(b) (1995).  In the end, the case comes down to this:  we rule on the basis of what the law is rather than what a party wishes it could be.

### III. CONCLUSION

In view of the aforesaid we will reverse the order entered May 3, 1996, and will remand this matter to the district court for further proceedings consistent with this opinion so that the order of the bankruptcy court of August 9, 1995, can be reinstated.