**In re Clinton Lee WILLIAMS and Sharon Ann Williams, Debtors.**

**Bankruptcy No. 01–36037KJC.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 5, 2003.

Michael P. Kelly, Langhorne, PA, for Debtors.

Gregory A. Baltz, Jenkintown, PA, Samuel B. Hornstein, Doylestown, PA, Jay B. Jones, Philadelphia, PA, for creditors.

George M. Conway, III, Philadelphia, PA, U.S. Trustee.

### MEMORANDUM OPINION [1]

KEVIN J. CAREY, Bankruptcy Judge.

Clinton and Sharon Williams (the "Debtors") filed a chapter 7 bankruptcy petition on November 14, 2001. On January 17, 2002, two creditors, Mary Bintliff and the Estate of Marilyn Myers (the "Creditors"), filed jointly an Objection To Claim Of Exemption (the "Exemption Objection") and an Objection to Abandonment (the "Abandonment Objection"), both containing identical averments and claims for relief.[2] The thrust of the Objections is three-fold: 1) the husband-debtor's $150,000 individual retirement account, held by The Vanguard Group (the "Debtor's IRA"), which he listed in his Schedule B (personal property), but which was *not* claimed by him as exempt in Schedule C, does not qualify for exclusion from property of the estate by virtue of Section 541(c)(2); 2) the Debtors have undervalued, at $3,000, certain assets remaining from a closed florist business ("Business Assets"), but which have been claimed exempt in Schedule C pursuant to Section 522(d)(5); and 3) neither the Debtor's IRA nor the Business Assets should be abandoned. The only remaining question properly before the Court is whether the Debtor's IRA is excluded from property of the bankruptcy estate by virtue of § 541(c)(2).[3]

1. This Memorandum constitutes the findings of fact and conclusions of law required by Fed. R. Bankr.P. 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)and (B).

2. At the March 11, 2002 hearing on the Abandonment Objection, the matter was marked as settled with a stipulation to be filed. The parties never filed a settlement stipulation for the Abandonment Objection and, in fact, the brief filed by the Creditors on April 3, 2002, was entitled "Creditors' Brief In Support Of Objection To Exemption And Objection To Abandonment," indicating to the Court that the Abandonment Objection was not settled. Therefore, this Memorandum Opinion resolves both objections, which will be referred to jointly as the "Objections."

3. In part, the Creditors seek a declaration that the Debtor's IRA is excluded from property of the estate under 11 U.S.C. § 541(c)(2). Fed.R.Bankr.P. 7001(9) requires requests for declaratory relief to be made by an adversary proceeding. However, because there was no objection to the form of the Objections and the parties have had adequate opportunity to respond and be heard, I will decide the Objections in their present form. *See In re Friedman,* 184 B.R. 883, 887 (Bankr.N.D.N.Y. 1994).

Oddly, no abandonment of either the Debtor's IRA or the Business Assets was proposed; the objection to any abandonment seems anticipatory. This matter was submitted for decision by the Court upon a written Stipulation of Facts and the briefs of the parties. Since these submissions do not address any issue concerning the Business Assets or abandonment of the Debtor's IRA, such objections are

A hearing to consider the Objections was held on March 11, 2002, at which the parties agreed to submit a stipulation of facts and to set a briefing schedule. The parties filed their Stipulation of Facts on April 3, 2002. The Creditors filed their brief in support of the Objections on April 3, 2002, and the Debtors filed their brief in opposition to the Objections on April 15, 2002. For the reasons set forth below, I conclude that the Debtor's IRA is not subject to the § 541(c)(2) exclusion, and, therefore, the Debtor's IRA is property of Clinton Williams' bankruptcy estate.

## BACKGROUND

The facts, as agreed by the parties, are summarized as follows: On January 1, 2001, the husband-debtor, Clinton Williams, closed his Amtrak Retirement Savings Plan, which was administered by The Vanguard Group and provided by his employer, Amtrak. On January 5, 2001, Mr. Williams rolled $174,319.07 of these proceeds into the Debtor's IRA. On November 14, 2001, the Debtors filed their voluntary petition for relief under chapter 7 of the United States Bankruptcy Code. The Debtors elected the federal exemptions as provided by 11 U.S.C. § 522(d). On Schedule B of their bankruptcy petition the Debtors listed the Debtor's IRA as an "ERISA Qualified Retirement Vanguard, approx $150,000." However, the Debtors did not claim the Debtor's IRA as exempt property on their Schedule C.

## DISCUSSION

It is well established that § 541, which defines what is property of the bankruptcy estate, is construed broadly. *See, e.g., United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76

L.Ed.2d 515 (1983); *Jones v. G.E. Capital Mortgage Co. (In re Jones),* 179 B.R. 450, 454 (Bankr.E.D.Pa.1995). However, § 541(c)(2) excludes from the bankruptcy estate a debtor's interest in a trust that contains "[a] restriction on the transfer of a beneficial interest of the debtor in [the] trust that is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2). *See also Patterson v. Shumate,* 504 U.S. 753, 758, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992). Congress carved out this exception because of "a deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings." *Velis v. Kardanis,* 949 F.2d 78, 82 (3rd Cir.1991).

■ In *Orr v. Yuhas (In re Yuhas),* 104 F.3d 612 (3rd Cir.1997), *cert. denied, Orr v. Yuhas,* 521 U.S. 1105, 117 S.Ct. 2481, 138 L.Ed.2d 990 (1997), the Third Circuit outlined five requirements for determining whether an individual retirement account (an "IRA") is excluded from the bankruptcy estate under § 541(c)(2):

1. the IRA must constitute a "trust" within the meaning of 11 U.S.C. § 541(c)(2);

2. the funds in the IRA must represent the debtor's "beneficial interest" in that trust;

3. the IRA must be qualified under Section 408 of the Internal Revenue Code;

4. the provision [in this case, 42 Pa. C.S.A. § 8214(b)(1)(ix)] must be a "restriction on the transfer" of the IRA funds; and

5. this restriction must be "enforceable under nonbankruptcy law."

*Yuhas,* 104 F.3d at 614. The Third Circuit's test is an inclusive one: all five

waived and are not properly before me in any event. *Provident Life and Accident Ins. Co. v. General Syndicators of America, Managers,*

*Inc. (In re Laramie Assoc., Ltd.),* 1997 WL 587288, *7 (E.D.Pa. Sept.8, 1997).

factors must be met for the Debtor's IRA to be excluded from the bankruptcy estate under § 541(c)(2). *See Pineo v. Fulton (In re Fulton),* 240 B.R. 854, 862 (Bankr. W.D.Pa.1999).

Specifically, *Yuhas* involved an examination of whether New Jersey law exempting IRAs constituted a "restriction on the transfer of a beneficial interest of the debtor in a trust under applicable nonbankruptcy law."[4] The New Jersey statute at issue provided, in pertinent part:

> Notwithstanding the provisions of any other law to the contrary, any property held in a qualifying trust and any distributions from a qualifying trust, regardless of the distribution plan elected for the qualifying trust, shall be exempt from all claims of creditors and shall be *excluded* from the estate in bankruptcy
> ...
>
> . . . . .
>
> For purposes of this section, a "qualifying trust" means a trust created or qualified and maintained pursuant to federal law, including, but not limited to, section ... 408 ... of the federal Internal Revenue Code of 1986 (26 U.S.C. § ... 408 ...).

N.J.S.A. § 25:2–1(b).

The Pennsylvania statute at issue here provides, in pertinent part:

> (1) Except as provided in paragraph (2) [related to the Public Employee Pension Forfeiture Act], the following money or other property of the judgment debtor shall be exempt from attachment or execution on a judgment:
>
> . . . .
>
> ix. Any retirement or annuity fund provided for under section 401(a),

403(a) and (b), 408, 408A, 409 or 530 of the Internal Revenue Code of 1986 (Public Law 99–514, 26 U.S.C. § 401(a), 403(a) and (b), 408, 408A, 409 or 530), the appreciation thereon, the income therefrom, the benefits or annuity payable thereunder and transfers and rollovers between such funds. This subparagraph shall not apply to:

> i. Amounts contributed by the debtor to the retirement or annuity fund within one year before the debtor filed for bankruptcy. This shall not include amounts directly rolled over from other funds which are exempt from attachment under this subparagraph.
>
> ii. Amounts contributed by the debtor to the retirement or annuity fund in excess of $15,000 within a one-year period. This shall not include amounts directly rolled over from other funds which are exempt from attachment under this subparagraph.

42 Pa.C.S.A. § 8124(b)(1)(ix).

The first requirement of *Yuhas* is that the Debtor's IRA must be a "trust" within the meaning of § 541(c)(2). The Debtors argue that the Debtor's IRA should be considered a trust for purposes of § 541(c)(2) because it is undisputed by the parties that the Debtor's IRA qualifies for beneficial tax treatment under 26 U.S.C. § 408. The Pennsylvania statute, like the New Jersey statute under review in *Yuhas,* encompasses and protects IRAs qualified under 26 U.S.C. § 408.

26 U.S.C. § 408, provides in relevant part, the following:

---

**4.** In *Yuhas,* the parties did not dispute that the IRA at issue there satisfied factors (1), (2), (3) and (5).

## § 408. Individual retirement accounts

(a) **Individual retirement account.**—For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:

(1) Except in the case of a rollover contribution described in subsection (d)(3), in section 402(c), 403(a)(4), 403(b)(8), and 457(e)(16), no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year on behalf of any individual in excess of the amount in effect for such taxable year under section 219(b)(1)(A).

(2) The trustee is a bank (as defined in subsection (n)) or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section.

(3) No part of the trust funds will be invested in life insurance contracts.

(4) The interest of an individual in the balance in his account is nonforfeitable.

(5) The assets of the trust will not be commingled with other property except in a common trust fund or common investment fund.

(6) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to the distribution of the entire interest of an individual for whose benefit the trust is maintained.

. . . .

(h) **Custodial accounts.**—For purposes of this section, a custodial account shall be treated as a trust if the assets of such account are held by a bank (as defined in subsection (n)) or another person who demonstrates, to the satisfaction of the Secretary, that the manner in which he will administer the account will be consistent with the requirements of this section, and if the custodial account would, except for the fact that it is not a trust, constitute an individual retirement account described in subsection (a). For purposes of this title, in the case of a custodial account treated as a trust by reason of the preceding sentence, the custodian of such account shall be treated as the trustee thereof.

However, some courts have held that these Internal Revenue Code ("I.R.C.") provisions are limited in their effect to tax implications and cannot be read, under their terms, to create a "trust" within the meaning of § 541(c)(2). *See Fulton,* 240 B.R. at 865–66 (holding that the explicit language of I.R.C. § 408(h) confined treatment of non-trust custodial accounts as trusts to the application of I.R.C. § 408); *Houck,* 181 B.R. at 191 ("IRAs are special forms of statutory trusts, established for purposes of tax deferral . . . . [T]he Internal Revenue Code acknowledges that they are not 'trusts' as that term is commonly used.").

The term "trust" is not defined in the Bankruptcy Code and the *Yuhas* Court does not provide any guidance on the issue because the parties in that case did not dispute that element of the test. *Yuhas,* 104 F.3d at 614. In defining the term "trust," at least one court has noted that:

[I]ts traditional and common meaning is neither controversial nor mysterious: A "trust . . . is a fiduciary relationship

with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, *which arises as a result of a manifestation of an intention to create it.*" Restatement (Second) of Trusts § 2 (emphasis added). *See also* Black's Law Dictionary (7th ed.1999) (providing a definition of "trust" which tracks the Restatement almost verbatim).

*In re Barnes,* 264 B.R. 415, 429–30 (Bankr. E.D.Mich.2001). The *Fulton* Court held that the law of the state of the situs of the alleged trust's *res* controls whether the fund is considered a "trust" under § 541(c)(2). *Fulton,* 240 B.R. at 862. Under Pennsylvania law, for a trust to exist there must be " 'a trustee, some property held in trust, and a beneficiary for whom the property is held.' " *Id., quoting* 38 P.L.E. Trusts § 11 at 463 (West 1961). A "trust" exists when one person (a trustee) holds legal title to property while equitable or beneficial title belongs to another (the beneficiary). *Walsh v. Commonwealth of Pennsylvania, Dept. of Public Welfare (In re Kingsley),* 181 B.R. 225, 232 (Bankr. W.D.Pa.1995).

The *Fulton* court held that IRA *annuities* did not constitute trusts under the meaning of § 541(c)(2) because the annuities lacked the requisite separation of legal title and beneficial interest; instead, the relationship of debtor and creditor, not trustee and beneficiary, existed. *Fulton,* 240 B.R. at 864. *Fulton* did not limit its discussion solely to IRA annuities, but explained in dicta the similarities between IRA annuities and IRA accounts: "Comparing an IRA custodial account to an individual retirement annuity, one of the common threads running between the two is that there is no separation of legal title to, and beneficial interest in, the funds at issue, be they the funds on deposit in an IRA custodial account or the funds possessed by the entity issuing an annuity contract." *Id.* at 865 n. 10.

The Debtors argue that the *Fulton* Court defined the term "trust" too narrowly because, in *Patterson v. Shumate,* the United States Supreme Court construed the term "trust" broadly, using both the terms "plan" and "trust" when writing that "the natural reading of the provision [§ 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in a *plan or trust* that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Patterson v. Shumate,* 504 U.S. at 758, 112 S.Ct. 2242 (emphasis added). The Debtors contend that § 541(c)(2) should apply to any type of trust (including self-settled trusts), as long as there is a restriction on the transfer of the trust that is enforceable under nonbankruptcy law.[5]

■ The starting point for statutory construction "must be the language employed by Congress ... and we assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.' " *American Tobacco Co. v. Patterson,* 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (citations omitted). In *Patterson v. Shumate,* the Supreme Court held that the meaning of the word "trust" in § 541(c)(2) was not limited only to "spendthrift trusts." *Patterson v. Shumate,* 504 U.S. at 761, 112 S.Ct. 2242. How broadly, then, should the term be construed? Congress chose neither to qualify the term "trust" in § 541(c)(2), nor

---

**5.** Presumably, the Debtors use the term "self-settled trust" to refer to an investment in which the trustee and the beneficiary are the same person; in other words, the depositor holds title to and is the beneficiary of the account. *See Eisenberg v. Houck (In re Houck),* 181 B.R. 187, 191 n. 9 (Bankr.E.D.Pa.1995)(Fitzgerald, J.).

to define it elsewhere in the Bankruptcy Code.

Arguably, what Pennsylvania has attempted to do by virtue of its exemption statute, is adopt implicitly a statutory trust scheme for treatment of IRAs, as framed by I.R.C. § 408(a) and (h). This seems consistent with the purpose of the Pennsylvania exemption statute, the Bankruptcy Code's exclusion provision and I.R.C. § 408: to provide for the protection of pension benefits. *Patterson v. Shumate*, 504 U.S. at 764–65, 112 S.Ct. 2242.

But, the Third Circuit, in considering a prior version of the Pennsylvania statute at issue here, has cautioned against reading too much into the statutory language. *In re Barshak*, 106 F.3d 501, 504 (3d Cir. 1997). The Court in *Barshak* also said: ". . . . although there are favorable tax advantages in both qualified employee benefit plans and IRAs and both serve to secure money for retirements, the status of an asset changes dramatically when it is shifted from a qualified ERISA plan to an IRA." *Barshak*, 106 F.3d at 506.[6]

6. It should also be noted that the Supreme Court in *Patterson v. Shumate*, said, in what might arguably be considered dicta:

[P]ension plans that qualify for preferential tax treatment under 26 U.S.C. § 408 (individual retirement accounts) are specifically excepted from ERISA's antialienation requirement. See 29 U.S.C. § 1051(6). Although a debtor's interest in these plans could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under "applicable nonbankruptcy law," that interest nevertheless could be exempted under § 522(d)(10)(E). 504 U.S. at 762–63, 112 S.Ct. 2242. (footnote omitted). *See also Velis*, 949 F.2d at 82.

7. Because of my conclusion that the Debtor's IRA does not meet factor (1), it follows that factor (2) is not met, since, if the Debtor's IRA is not a trust, the funds in it cannot be a beneficial interest in a trust.

Any similarity between the Pennsylvania statute before me now and the New Jersey statute at issue in *Yuhas* is not sufficient to control the result here, for at least two reasons. First, *Yuhas* did not address factor (1), since the parties had not raised—and the Court only assumed—that this factor was met. *Yuhas*, 104 F.3d at 614. Second, the New Jersey statute at issue in *Yuhas* expressly declares that an IRA is a trust if it meets the qualifications of I.R.C. § 408; the Pennsylvania statute before me falls far short of declaring an IRA a "trust." To read such a provision into the statute would be to insert that which simply is not there. Moreover, as the analyses of the courts in cases like *Fulton* and *Houck* demonstrates, the Debtor's IRA is not possessed of the necessary characteristics of a trust under any applicable standard.

### CONCLUSION

The Debtor's IRA is not excluded from property of the Debtors' bankruptcy estate under § 541(c)(2) because it fails to satisfy the first requirement of the test outlined by the Third Circuit in *Yuhas*.[7]

The parties' briefs reveal their agreement that the Debtor's IRA qualifies under I.R.C. § 408, thereby meeting factor (3) of the *Yuhas* test. However, neither party presented any other evidence concerning the particular account terms governing the Debtor's IRA.

With respect to factor (4), the Creditors do not dispute that the Pennsylvania statute is a "restriction on the transfer" of the funds in the Debtor's IRA. The *Yuhas* Court viewed the term "transfer," which is defined in 11 U.S.C. 101(54), as "encompass[ing] a wide range of dispositions," and decided that any restriction on a creditor's ability to reach IRA funds to satisfy a claim constituted a transfer restriction under § 541(c)(2). *Yuhas*, 104 F.3d at 614. It rejected the argument that the term "restriction" should be limited to a restriction on only the *debtor's* ability to transfer funds. *Yuhas*, 104 F.3d at 615. Further, the *Yuhas* Court decided that it is not necessary for the transfer restriction to be set forth in the document creating the trust; instead, the restric-

An appropriate order follows.[8]

tion can be found in a separate nonbankruptcy statute. *Yuhas*, 104 F.3d at 615–16, n. 3.

While factor (5) was not disputed in *Yuhas*, the implication that the Court agreed that the New Jersey statute at issue fell within this language is unavoidable. *Yuhas*, 104 F.3d at 614 n. 1. The Pennsylvania statute at issue here is similar enough to the New Jersey statute, for the purpose of being a restriction that is "enforceable under nonbankruptcy law," to meet factor (5) of the *Yuhas* test. *But see Fulton*, 240 B.R. at 869; *Houck*, 181 B.R. at 193.

8. The Debtors have elected the federal exemptions under § 522(b)(1) and (d). The Debtor's IRA may be exempt under Pennsylvania law, *but see In re Clark*, 711 F.2d 21 (3d Cir. 1983)(only present right to payment exempt); therefore, the Debtors will be given an opportunity to amend Schedule C to claim instead the § 522(b)(2) exemptions under state law. *See* Fed.R.Bankr.P. 1009; *In re Van Nostrand*, 183 B.R. 82, 86–87 (Bankr.D.N.J.1995).