In re Robert D. ALLEN, Debtor.

Pennsylvania Capital Bank, Movant,

v.

Robert D. Allen, Respondent.

Bankruptcy No. 97–26908–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 18, 1998.

Peter N. Pross, Pittsburg, PA, for Pennsylvania Capital Bank.

Douglas A. Campbell, for Robert D. Allen.

### MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

Robert D. Allen, the debtor in the above-captioned bankruptcy case and respondent herein, claims as exempt his interests in an individual retirement account (IRA) and a simplified employee pension (SEP).[1] Allen, pursuant to 11 U.S.C. § 522(b)(2), has elected to take those exemptions provided by applicable nonbankruptcy law, including exemptions set forth under the law of Pennsylvania. Allen seeks to exempt his entire in-

---

1. Allen, in reliance upon the Third Circuit authority of *In re Yuhas,* 104 F.3d 612 (3rd Cir. 1997), initially asserted that his interests in the IRA and SEP were excluded from property of his bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). Allen has since conceded that both accounts are property of the bankruptcy estate. *See* Supplement to Pretrial Statement/Stipulation, Part VI, para. 47.

terest in the IRA and SEP pursuant to 42 Pa.Cons.Stat.Ann. § 8124(b)(1)(ix). 42 Pa.C.S.A. § 8124(b)(1)(ix) provides, in pertinent part, the following:

(b) Retirement funds and accounts.—

(1) . . . [T]he following money or other property of the judgment debtor shall be exempt from attachment or execution on a judgment:

. . .

(ix) Any retirement or annuity fund provided for under section 401(a), 403(a) and (b), 408 or 409 of the Internal Revenue Code of 1986 . . ., the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder. This subparagraph shall not apply to:

(A) Amounts contributed by the debtor to the retirement or annuity fund within one year before the debtor filed for bankruptcy.

(B) Amounts contributed by the debtor to the retirement or annuity fund in excess of $15,000 within a one-year period.

(C) Amounts deemed to be fraudulent conveyances.

42 Pa.C.S.A. § 8124(b)(1)(ix) (Purdon's 1998).[2] Pennsylvania Capital Bank (hereafter "PCB"), movant herein and a party in interest by virtue of its two claims against Allen's bankruptcy estate totalling $297,050.19, see Supplement to Pretrial Statement/Stipulation, Part VI, para. 38 & 39, objects to Allen's exemption[3] of his entire interest in the IRA and SEP,[4] contending rather that Allen may only exempt a portion of the interests in the two accounts pursuant to 42 Pa.C.S.A. § 8124(b)(1)(ix).[5] For reasons set forth below, this Court concurs with portions of PCB's objection to Allen's exemption of his entire interest in the two accounts; however, the Court concludes that Allen may exempt a portion of each account.[6]

## STATEMENT OF FACTS

Allen, after having opened his IRA with Dean Witter Reynolds, Inc. (hereafter "Dean Witter") on August 9, 1990, made an initial contribution to that account of $15,712.47 on

2. 42 Pa.C.S.A. § 8124(b)(1)(ix) was amended on February 18, 1998, to explicitly exempt from attachment or execution on a judgment "transfers and rollovers between . . . [those] funds [previously listed as exempt]." Act of February 18, 1998, Act No. 1998–26, 1998 Pa.Legis.Serv.1998–26, Section 5 (Purdon's 1998) (to be codified at 42 Pa.C.S.A. § 8124(b)(1)(ix)). The first two exceptions to the exemption in § 8124(b)(1)(ix), which are set forth in paragraphs (A) and (B) therein, were also amended to make clear that said exceptions "shall not include amounts directly rolled over from other funds which are exempt from attachment under this subparagraph." *Id.* However, this Court must, in this matter, apply § 8124(b)(1)(ix) as it stood prior to the aforementioned amendment because (a) the amendment was explicitly made effective as of February 18, 1998, *see Id.* at Section 6, and thus may not be construed as effective on September 22, 1997, which is the date upon which Allen filed his Chapter 7 bankruptcy petition, *see* 1 Pa.C.S.A. §§ 1926 and 1953, and (b) Allen may only exempt property "that is exempt under Federal law . . . or State or local law *that is applicable on the date of the filing of the petition.*" 11 U.S.C.A. § 522(b)(2)(A) (West 1993) (emphasis added); *see also In re Gardner,* 139 B.R. 460, 462 (Bankr.E.D.Ark.1991).

3. PCB objects to Allen's claimed exemptions pursuant to 11 U.S.C. § 522(*l*) and Fed.R.Bankr.P. 4003(b).

4. PCB also objected to Allen's exemption of his interest in a joint checking account that Allen claimed he owned with his wife as tenants by the entirety. The parties have since agreed that the checking account may not be exempted as entireties property or otherwise. *See* Supplement to Pretrial Statement/Stipulation, Part VI, para. 51.

5. PCB concedes that Allen's IRA and SEP are both retirement funds that are provided for under § 408 of the Internal Revenue Code, and thus meet that threshold requirement of 42 Pa.C.S.A. § 8124(b)(1)(ix). *See* Pretrial Statement/Stipulation, Part VI, para. 42.

6. PCB's claims against Allen have been previously reduced to judgments, *see* Pretrial Statement/Stipulation, Part VI, para. 20 & 24, and PCB served writs of execution and garnishment interrogatories upon the custodians of Allen's IRA and SEP approximately four months prior to the commencement of this bankruptcy case. *See* Pretrial Statement/Stipulation, Part VI, para. 31 & 32. However, the parties have stipulated that whether PCB holds perfected judgment liens against Allen's IRA and SEP, as well as whether such liens may be avoided, will not be adjudicated in connection with PCB's objection to Allen's exemptions. *See* Supplement to Pretrial Statement/Stipulation, Part VI, para. 52.

February 22, 1991. *See* Pretrial Statement/Stipulation, Part VI, para. 5 & 7. Allen made additional contributions to the IRA in the following amounts on the following dates (the initial contribution on 2/22/91 is designated as number (1) below):

| (1) | $15,712.47 | — | 2/22/91 |
|---|---|---|---|
| (2) | $ 459.64 | — | 9/ 3/91 |
| (3) | $ 242.13 | — | 11/27/91 |
| (4) | $ 523.42 | — | 9/23/92 |
| (5) | $ 2,000.00 | — | 4/19/93 |
| (6) | $ 2,000.00 | — | 6/21/93 |
| (7) | $ 2,000.00 | — | 2/22/94 |
| (8) | $ 2,000.00 | — | 1/23/95 |
| (9) | $ 2,000.00 | — | 1/23/96 |

*See* Pretrial Statement/Stipulation, Part VI, para. 19 and Supplement thereto, Part VI, para. 43. On February 1, 1993, Allen directly transferred the sum in his IRA at that time, or $10,503.25, from Dean Witter to Janus Funds, Inc. (hereafter "Janus"). *See* Pretrial Statement/Stipulation, Part VI, para. 11 and Supplement thereto, Part VI, para. 45.

Allen opened his SEP on March 23, 1992, with 20th Century Investors, Inc. (hereafter "20th Century") by contributing $4,000.00 to that account on the same date. *See* Pretrial Statement/Stipulation, Part VI, para. 9. Allen made additional contributions to the SEP in the following amounts on the following dates (the initial contribution on 3/23/92 is designated as number (1) below):

| (1) | $ 4,000.00 | — | 3/23/92 |
|---|---|---|---|
| (2) | $ 3,000.00 | — | 4/23/92 |
| (3) | $ 3,000.00 | — | 6/12/92 |
| (4) | $ 3,000.00 | — | 10/29/92 |
| (5) | $11,000.00 | — | 1/11/93 |
| (6) | $ 8,500.00 | — | 2/12/93 |
| (7) | $ 8,500.00 | — | 4/ 5/93 |
| (8) | $ 2,000.00 | — | 7/30/93 |
| (9) | $ 3,500.00 | — | 8/16/93 |
| (10) | $ 2,535.00 | — | 8/16/93 |
| (11) | $ 5,000.00 | — | 5/20/94 |
| (12) | $ 500.00 | — | 5/31/94 |
| (13) | $ 2,500.00 | — | 7/ 5/94 |
| (14) | $ 3,000.00 | — | 7/ 5/94 [7] |
| (15) | $10,300.00 | — | 8/18/94 |
| (16) | $ 2,500.00 | — | 8/29/94 |
| (17) | $ 1,000.00 | — | 9/19/94 |
| (18) | $ 1,000.00 | — | 10/31/94 |
| (19) | $ 4,200.00 | — | 11/28/94 |
| (20) | $ 2,000.00 | — | 1/23/95 |
| (21) | $ 1,000.00 | — | 2/21/95 |
| (22) | $ 2,000.00 | — | 4/19/95 |
| (23) | $ 5,000.00 | — | 6/16/95 |
| (24) | $ 4,000.00 | — | 7/17/95 |
| (25) | $ 4,000.00 | — | 8/10/95 |
| (26) | $ 4,000.00 | — | 9/18/95 |
| (27) | $ 3,000.00 | — | 1/19/96 |
| (28) | $ 3,000.00 | — | 2/ 7/96 |

*See* Pretrial Statement/Stipulation, Part VI, para. 19. On April 6, 1995, Allen directly transferred the sum in his SEP at that time, or $89,014.08, from 20th Century to Fidelity Management Trust Company (hereafter "Fidelity"). *See* Pretrial Statement/Stipulation, Part VI, para. 17 and Supplement thereto, Part VI, para. 46.

The parties agree that Allen did not make any contributions to either the IRA or the SEP within one year of September 22, 1997, which is the date upon which Allen filed his Chapter 7 bankruptcy petition. *See* Pretrial Statement/Stipulation, Part VI, para. 36 and Supplement thereto, Part VI, para. 44. Therefore, paragraph (A) of 42 Pa.C.S.A. § 8124(b)(1)(ix) is inapplicable to both the IRA and the SEP. However, the parties dispute whether paragraphs (B) and (C) of 42 Pa.C.S.A. § 8124(b)(1)(ix), when applied to Allen's IRA and SEP, operate to except from exemption certain of the contributions that Allen made to the two accounts. The parties also dispute whether the appreciation or income that resulted from any contribution that is found to be nonexempt under 42 Pa.C.S.A. § 8124(b)(1)(ix) is nevertheless itself exempt under that section.

### DISCUSSION

**I. *Whether any contributions that Allen made to his IRA and SEP may be deemed to be fraudulent conveyances, thereby excepting them from exemption pursuant to paragraph (C) of 42 Pa. C.S.A. § 8124(b)(1)(ix)?***

PCB asserts in its objection that Allen is not entitled to exempt certain of his contributions to the IRA or SEP because they were fraudulent conveyances pursuant to Pennsylvania law and, as such, are excepted from exemption under 42 Pa.C.S.A.

---

7. The parties' stipulations and proposed stipulations list this contribution as having been made on 7/5/97. The Court will presume, unless subsequently informed to the contrary, that the actual date of this contribution was 7/5/94 and that such was the intent of the parties' stipulation.

§ 8124(b)(1)(ix) pursuant to paragraph (C) thereto. The parties, however, now agree that Allen "is not entitled to exempt any of the contributions [that he] made to [either] his IRA or SEP[ ] after December 1994" (designated above as contributions No. 8–9 to the IRA and No. 20–28 to the SEP). *See* Supplement to Pretrial Statement/Stipulation, Part VI, para. 49. The Court presumes that this stipulation represents a concession by Allen that these contributions were fraudulent conveyances, or at least constructively so, because (a) Allen "first became insolvent in December 1994," *see* Pretrial Statement/Stipulation, Part VI, para. 13, and (b) Allen was indebted to PCB on, or prior to, December 1994. *See* Pretrial Statement/Stipulation, Part VI, para. 8 and 10. The parties also agree that contributions by Allen to the IRA and/or SEP before February 1, 1994 (designated above as contributions No. 1–6 to the IRA, No. 1–10 to the SEP, and the direct transfer by Allen on February 1, 1993, of the sum in his IRA at that time from Dean Witter to Janus), may not be deemed to be fraudulent conveyances because claims of fraudulent conveyance by PCB with respect to these contributions are time-barred by the applicable statute of limitations.[8] *See* Supplement to Pretrial Statement/Stipulation, Part VI, para. 48. Therefore, to the extent that PCB continues to press its fraudulent conveyance claim, said claim must now necessarily be confined to (a) contributions that Allen made to the two accounts between February 1, 1994 and December 31, 1994 (designated above as contributions No. 7 to the IRA and No. 11–19 to the SEP), and (b) Allen's direct transfer on April 6, 1995, of the sum in his SEP at that time from 20th Century to Fidelity.[9]

The Court will not address at this time whether the contributions made by Allen between February 1, 1994 and December 1, 1994 constitute fraudulent conveyances because additional facts are necessary for a resolution of that issue, such as whether Allen was insolvent when these contributions were made or whether circumstances existed then from which a fraudulent intent on his part could be inferred. However, the Court concludes at this time, without any need for additional evidence, that Allen's direct transfer on April 6, 1995, of the sum in his SEP at that time from 20th Century to Fidelity could not have constituted a fraudulent conveyance. This conclusion is warranted because (a) PCB can only attack as fraudulent those transfers of property by Allen which had the result of shielding said property from the reach of PCB, and (b) Allen's subject transfer on April 6, 1995, did not shield property from the reach of PCB or any other creditor since (i) Allen retained ownership over the property in the SEP, and (ii) said transfer did not change the status of property within the SEP from nonexempt to exempt (ie., property that was exempt pre-transfer remained so post-transfer, and likewise with respect to property that was non-exempt pre-transfer).

Additionally, Pennsylvania's fraudulent transfer law expressly only attacks transfers of assets to the extent that said assets are *not generally exempt under nonbankruptcy law.* See 12 Pa.C.S.A. § 5101(b) (while "transfer" is defined as "[e]very mode . . . of disposing of or parting with an asset," "asset" "does not include . . . property [of a debtor] to the extent it is *generally exempt under nonbankruptcy law*"). "The reference

---

8. The Court presumes that this stipulation by the parties extends to Allen's direct transfer on February 1, 1993, of the sum in his IRA at that time from Dean Witter to Janus because that direct transfer, even though a dispute exists as to whether it is a "contribution" for the purpose of § 8124(b)(1)(ix)(B), *see infra* pp. 137–39, nevertheless constitutes a transfer that occurred outside of the applicable statute of limitations.

9. The Court must presume that the parties' stipulation at Part VI, paragraph 49 of the Supplement to Pretrial Statement/Stipulation (ie., that Allen is not entitled to exempt any contributions

that he made subsequent to December 1994) does not pertain to Allen's direct transfer on April 6, 1995, of the sum in his SEP at that time from 20th Century to Fidelity because (a) Allen continues to maintain that said transfer does not constitute a "contribution" for purposes of § 8124(b)(1)(ix), thereby shielding it from the exemption limitation contained in paragraph (B) thereto, *see infra* pp. 137–39, and (b) it would be pointless for Allen to continue to argue the inapplicability of § 8124(b)(1)(ix)(B) to said transfer if he conceded that it was nonexempt in any event.

to 'generally exempt' property in ... the definition of 'asset' [under 12 Pa.C.S.A. § 5101(b) ] recognizes that all exemptions are subject to exceptions ...[, which means that t]he fact that a particular creditor may reach generally exempt property ... does not warrant its inclusion as an asset" for purposes of the fraudulent transfer law. *See* 1993 Committee Comment to 12 Pa.C.S.A. § 5101 (Purdon's 1998), para. 2 at p. 5. Because money placed in a retirement fund such as a SEP is *generally* exempt under nonbankruptcy law, it would appear that the money in Allen's SEP had, prior to April 6, 1995, already been converted into property that is *generally* exempt under nonbankruptcy law. Consequently, a subsequent transfer of said property on April 6, 1995, would apparently not be subject to Pennsylvania's fraudulent transfer law. The Court need not pursue the precise accuracy of this conclusion given that it can conclude, on the basis of the rationale contained in the preceding paragraph, that PCB may only attack as potentially fraudulent Allen's initial contributions of property into his SEP, but not subsequent transfers of the same property from one custodian to another such as was the subject transfer on April 6, 1995.

## II. Whether any contributions that Allen made to his IRA and SEP may be excepted from exemption pursuant to the limitation in paragraph (B) of 42 Pa.C.S.A. § 8124(b)(1)(ix)?

PCB also asserts in its objection that many of Allen's contributions to the two accounts may not be exempted pursuant to 42 Pa. C.S.A. § 8124(b)(1)(ix) because they run afoul of the exception contained in paragraph (B) thereto. In other words, PCB asserts that many of the contributions by Allen were "in excess of $15,000.00 within a one-year period." Allen staunchly disagrees with this assertion by PCB. The parties' dispute can be narrowed to the following discrete issues:

(a) Whether Allen's direct transfers of the sums then in his IRA and SEP from one custodian to another on, respectively, February 1, 1993, and April 6, 1995, constitute "contributions" for the purpose of § 8124(b)(1)(ix)(B)?

(b) Whether the IRA and SEP must be considered separately when applying § 8124(b)(1)(ix)(B)?

(c) Whether the "one-year period" in § 8124(b)(1)(ix)(B) refers only to that single year preceding an attempted attachment or execution on a judgment? If it does not refer to that particular single year, then to what does it refer?

Since the parties have stipulated that contributions made by Allen after December 1994 may not be exempted, the dispute regarding the proper construction of § 8124(b)(1)(ix)(B) will only impact (a) contributions that Allen made prior to December 31, 1994 (ie., contributions designated above as No. 1–7 to the IRA, No. 1–19 to the SEP, and the direct transfer by Allen on February 1, 1993, of the sum in his IRA at that time from Dean Witter to Janus), and (b) Allen's direct transfer on April 6, 1995, of the sum in his SEP at that time from 20th Century to Fidelity.[10]

The Court will now proceed to address each of the issues outlined above, all of which appear to constitute matters of first impression in Pennsylvania.

### A. Whether Allen's direct transfers of the sums then in his IRA and SEP from one custodian to another on, respectively, February 1, 1993, and April 6, 1995, constitute "contributions" for the purpose of § 8124(b)(1)(ix)(B)?

The parties disagree as to whether Allen's direct transfers of the sums then in his IRA and SEP from one custodian to another on, respectively, February 1, 1993, and April 6, 1995, constitute "contributions" for the purpose of § 8124(b)(1)(ix)(B). Those two transfers were in the amount of $10,-

10. The proper construction of § 8124(b)(1)(ix)(B) will impact the exempt status of Allen's direct transfer on April 6, 1995, of the sum in his SEP at that time from 20th Century to Fidelity notwithstanding that said transfer occurred subsequent to December 1994 since (a) the Court must presume that the parties did not stipulate as to the exempt status of said transfer, *see supra* p. 136 note 9, and (b) said transfer could not have constituted a fraudulent conveyance. *See supra* pp. 136–37.

503.25 and 89,014.08, respectively. PCB, as support for its position that the two transfers constitute "contributions" under § 8124(b)(1)(ix)(B), appears to rely solely on the Third Circuit's decision in *In re Barshak*, 106 F.3d 501 (3rd Cir.1997), *rev'g* 195 B.R. 321 (E.D.Pa.1996), *rev'g* 185 B.R. 210 (Bankr. E.D.Pa.1995), wherein the Third Circuit held that a single, lump-sum rollover contribution to an IRA from an ERISA-qualified plan constitutes a "contribution" subject to the $15,000 limitation contained in 42 Pa.C.S.A. § 8124(b)(1)(ix)(B). *See Id.* at 504–06. This Court must reject PCB's position, however, because the transfer at issue in *Barshak* is significantly different, and thus may be distinguished, from Allen's direct transfers of his two funds on February 1, 1993, and April 6, 1995.

▆ The rollover contribution in *Barshak* represented a transfer of property between two separate and distinct retirement funds, one of which qualified for preferred tax treatment under I.R.C. § 401(a), *see Barshak*, 106 F.3d at 502, while the other qualified for similar treatment under I.R.C. § 408. *See Barshak*, 195 B.R. at 323. The Third Circuit concluded that (a) the plain language of § 8124(b)(1)(ix)(B) "does not distinguish between 'rollover contributions' and 'contributions,'" *Barshak*, 106 F.3d at 504, (b) pursuant to 1 Pa.C.S.A. § 1921(b), it could not "ignore the clear language of [§ 8124(b)(1)(ix)(B) ]" so that it could then "act consistently with a[n arguably contrary] legislative policy," *Id.* at 506, and (c) the rollover contribution at issue in *Barshak* was a "contribution" to the transferee fund because said transfer (i) "enhanced the IRA [ (ie., the transferee fund in *Barshak* ) ] by $71,134.75 [ (the amount of the transfer) ]," *see Barshak*, 106 F.3d at 505, and (ii) "changed the status of the money [that was transferred]." *Id.* at 505–06. The Third Circuit, by concluding as it did, necessarily must have ascertained that the aforementioned characteristics of the rollover transfer at issue in *Barshak clearly,* or *plainly,* define the term "contribution" as it is used in § 8124(b)(1)(ix)(B). This Court absolutely agrees with the Third Circuit in that regard because the term "contribute," at least within the context that it is placed in

§ 8124(b)(1)(ix)(B), can only denote a transfer to a fund of something that was not already within, or a part, of that fund; put another way, a "contribution" cannot arise unless a fund is enhanced and/or the status of that which is transferred is changed.

When construing § 8124(b)(1)(ix)(B) in this matter, this Court, of course, is also constrained to apply the rule of statutory construction contained in 1 Pa.C.S.A. § 1921(b), *see* 1 Pa.C.S.A. § 1901 (Purdon's 1995) ("In the construction of the statutes of this Commonwealth, the rules set forth in this chapter *shall* be observed, unless the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly"), which means that this Court must also apply the plain meaning of the term "contribution." However, with regard to the two subject transfers by Allen in the instant matter, Allen did not transfer property between two separate and distinct retirement funds which qualified for preferred tax treatment under separate provisions of the Internal Revenue Code. Instead, Allen, in each instance, merely transferred between custodians all of the property that was then in the IRA or SEP, respectively; put another way, Allen merely transferred the fund itself from one custodian to another. Furthermore, neither transfer by Allen (a) enhanced the value of either fund since the values of the two funds remained precisely the same after the transfers as they were before, and (b) effected a change in the status of the property contained in either fund prior to the transfer as measured by preferred tax treatment or otherwise. Therefore, pursuant to the plain language of § 8124(b)(1)(ix)(B), and consistent with the Third Circuit's decision in *Barshak,* this Court must (a) hold that the transfer between custodians of all of the property that is then in a fund does not constitute a "contribution" for the purpose of § 8124(b)(1)(ix)(B), and (b) conclude that the subject direct transfers by Allen on February 1, 1993, and April 6, 1995, were not "contributions" for the purpose of § 8124(b)(1)(ix)(B).

This Court points out that Allen very well might have made a "contribution" subject to

the $15,000 limitation contained in § 8124(b)(1)(ix)(B) if he had transferred amounts from his IRA to his SEP, or vice-versa, because (a) one of the funds would have been enhanced in value to the detriment of the other, and (b) the transferred property might have been viewed as having been subjected to a change in status since a SEP is governed by some provisions (ie., I.R.C. § 408(k)) that are different from those governing a typical IRA. However, Allen did not transfer amounts between his IRA and SEP on either occasion in controversy. Therefore, the subject transfers by Allen on February 1, 1993, and April 6, 1995, are not "contributions" for the purpose of, and simply are not subject to the $15,000 limitation contained in, § 8124(b)(1)(ix)(B).[11]

## B. *Whether Allen's IRA and SEP must be considered separately when applying 42 Pa.C.S.A. § 8124(b)(1)(ix)(B)?*

■ The parties dispute, as a legal matter, whether § 8124(b)(1)(ix)(B) must be applied separately to Allen's IRA and SEP. Allen contends that § 8124(b)(1)(ix)(B) must be applied separately to his IRA and SEP because, according to Allen, the plain language of the statute unambiguously dictates that result. PCB, on the other hand, contends that § 8124(b)(1)(ix)(B) must be applied in the instant case by aggregating Allen's IRA and SEP because (a) the IRA and SEP actually comprise one retirement fund rather than two separate retirement funds, and (b) Allen's construction of § 8124(b)(1)(ix)(B), if accepted, will negate the Pennsylvania legislature's intent to except from exemption the aggregate of a debtor's annual contributions in excess of $15,000.

This Court, after thoroughly considering the issue, first rejects PCB's construction of the phrase "retirement or annuity fund" as an amalgamation of all of the various plans of deferred compensation in which a particular debtor may participate. When undertaking to construe statutes of Pennsylvania, this Court must apply all of the applicable rules of statutory construction found at 1 Pa.C.S.A.

§§ 1901–1991, "unless the application of such rules would result in a construction inconsistent with the manifest intent of the [Pennsylvania] General Assembly." 1 Pa.C.S.A. § 1901 (Purdon's 1995). One of those statutory rules of construction is that a court must construe words and phrases found within a statute, *inter alia,* "according to rules of grammar." 42 Pa.C.S.A. § 1903(a) (Purdon's 1995) (emphasis added). Therefore, this Court cannot construe the phrase "retirement or annuity fund" by isolating it from, and thereby ignoring, the language that surrounds it in § 8124(b)(1)(ix). The phrase "retirement or annuity fund" appears in three separate places within § 8124(b)(1)(ix); in particular, the phrase appears within the flush portion of § 8124(b)(1)(ix) and also in parts (A) and (B) thereto. Given the surrounding language within the flush portion of § 8124(b)(1)(ix), the Court cannot conclude that the phrase "retirement or annuity fund" describes or refers to an amalgamation of all of the potential deferred compensation plans "provided for under section 401(a), 403(a) and (b), 408 or 409 of the Internal Revenue Code (hereafter "IRC") of 1986." If the Pennsylvania legislature intended the phrase "retirement or annuity fund" to be so construed, then the legislature would also have placed the word "the" rather than the word "any" before said phrase. Because the legislature placed the word "any" before said phrase, the Court concludes that said phrase instead refers to each separate deferred compensation plan that a debtor has that is provided for under one of the enumerated IRC sections. Therefore, this Court must conclude that Allen possesses, in the form of his IRA and SEP, two separate "retirement or annuity funds" for the purpose of § 8124(b)(1)(ix). Notwithstanding this conclusion, the Court's analysis is not at an end.

This Court must also recognize the statutory rule of construction that "[t]he singular [in a statute] shall include the plural." 1 Pa.C.S.A. § 1902 (Purdon's 1995); *see also Commonwealth v. Goins,* 508 Pa. 270, 495

---

11. The Court has already determined that neither of these particular transfers are subject to the limitations contained in paragraphs (A) or (C) of § 8124(b)(1)(ix) either. *See supra* pp. 135–36

(citing the parties' stipulation at para. 44); *supra* p. 136 and note 8 (citing the parties' stipulation at para. 48); and *supra* pp. 136–37.

A.2d 527, 534 (1985) (the "singular/plural" rule of construction "is mechanically applied in all instances"); *Id.* at 537 note 4 (Larsen, J., concurring and dissenting); *Commonwealth v. Adams*, 362 Pa.Super. 549, 524 A.2d 1375, 1378 (1987) (a court may not conclude that a word in a statute shall be construed in the singular or plural merely because of "the presence or absence of an 's' at the end of ... [such] word"); *Commonwealth v. Murphy*, 310 Pa.Super. 373, 456 A.2d 659, 661 (1983); *Summit House Condominium v. Commonwealth*, 514 Pa. 221, 523 A.2d 333, 335 (1987). As a result, this Court cannot dispense with this dispute, as Allen would prefer, by simply resting upon the plain language of § 8124(b)(1)(ix) in accordance with 1 Pa.C.S.A. § 1921(b) (ie., "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded"). However, and as mentioned earlier, a statutory rule of construction cannot be applied if to do so would result in a construction inconsistent with the manifest intent of the Pennsylvania legislature. *See supra* p. 15. This Court concludes that the legislature clearly intended § 8124(b)(1)(ix) to be applied separately to each fund possessed by a debtor and, as evidence, points to the legislature's reference to "retirement or annuity *fund* " in the singular on no less than three separate occasions within § 8124(b)(1)(ix). Consequently, this Court shall apply the $15,000 annual limitation contained in § 8124(b)(1)(ix)(b) separately to contributions made by Allen to his IRA and SEP. Because the Court concludes that the legislature did not intend to except from exemption merely the aggregate of a debtor's annual contributions in excess of $15,000, the Court must, of course, also reject PCB's argument that Allen's construction of § 8124(b)(1)(ix)(B), if accepted, will negate the Pennsylvania legislature's intent.

C. ***Whether the "one-year period" in § 8124(b)(1)(ix)(B) refers only to that single year preceding an attempted attachment or execution on a judgment? If it does not refer to that particular single year, then to what does it refer?***

Allen asserts that the "one-year period" in § 8124(b)(1)(ix)(B) refers only to that single year that precedes an attempted attachment or execution on a judgment by a creditor, or as Allen puts it, the year which precedes "the event which prompts the need to apply the [s]tatute." PCB, on the other hand, (a) contends that the "one-year period" in § 8124(b)(1)(ix)(B) refers to multiple "one-year period[s]," and (b) acquiesces, or "concedes," to the use of the calendar year for the purpose of establishing the parameters of said one-year periods. Allen supports his position, and attempts to discredit that of PCB, by arguing, *inter alia*, that a construction of § 8124(b)(1)(ix)(B) which results in an application of the limitation therein to multiple one-year periods (a) "disregards the unambiguous word 'a' before the phrase 'one-year period,' " (b) "violates Pennsylvania's rules of statutory construction," and (c) impermissibly rewrites the statute. Furthermore, Allen contends that a construction of the statutory language different than that which he proposes would (a) "leav[e] the one-year period [in § 8124(b)(1)(ix)(B) ] disconnected from any [internal] point of reference," thereby leading to confusion as to how to establish the parameters of the said "one-year period." Finally, Allen speculates that § 8124(b)(1)(ix)(B) perhaps is not even applicable in the context of a bankruptcy case given the presence of § 8124(b)(1)(ix)(A). The Court disagrees with Allen's construction of § 8124(b)(1)(ix)(B) and takes issue with each portion of his supporting rationale for the following reasons.

First, as has already been noted previously, when undertaking to construe § 8124(b)(1)(ix)(B), this Court must apply the statutory rule of construction that "[t]he singular [therein] shall include the plural." 1 Pa.C.S.A. § 1902; *see also supra* p. 139. After applying this rule of construction to § 8124(b)(1)(ix)(B), the "one-year period" referred to therein must also be read as "one-year *periods*." As a practical result, the limitation contained in § 8124(b)(1)(ix)(B) must be applied to multiple one-year periods rather than to a single year.

Furthermore, the Court must conclude that this construction is not inconsistent with

the *manifest* intent of the Pennsylvania legislature, thus necessitating the application of 1 Pa.C.S.A. § 1902. *See* 1 Pa.C.S.A. § 1901 (statutory rules of construction, such as that in 1 Pa.C.S.A. § 1902, must be "observed … unless the application of such rules would result in a construction inconsistent with the manifest intent of the [Pennsylvania] General Assembly"); *see also supra* pp. 139–40. The Court finds support for this conclusion in the placement of the word "a" before the phrase "one-year period" in § 8124(b)(1)(ix)(B). Although Allen maintains that this particular usage of the word "a" is unambiguous and that it supports his position, the Court disagrees, concluding instead that, if the Pennsylvania legislature had intended to limit the use of § 8124(b)(1)(ix)(B) to but a single one-year period—and, in particular, the one-year period preceding an internal reference point—the word "the" rather than the word "a" would have been placed immediately before the phrase "one-year period." Moreover, if Allen's position were representative of the Pennsylvania legislature's intent, then one would truly expect to find language at the end of § 8124(b)(1)(ix)(B) such as "within the one-year period immediately preceding attachment or execution." Indeed, similar language regarding the commencement of a bankruptcy case is found at the end of § 8124(b)(1)(ix)(A). Finally, this Court also recognizes that the Third Circuit in *Barshak,* although not faced with this precise issue, nevertheless undeniably applied § 8124(b)(1)(ix)(B) therein to a one-year period that was prior to the year which immediately preceded the filing of the bankruptcy petition therein. *See Barshak,* 106 F.3d at 502, 504–06. This indicates to this Court that the Third Circuit has already construed § 8124(b)(1)(ix)(B) such that it shall be applied to multiple one-year periods. Therefore, § 8124(b)(1)(ix)(B), after application of 1 Pa.C.S.A. § 1902, must be construed so that it is applied to multiple one-year periods. As a consequence, said construction is not an impermissible rewriting of § 8124(b)(1)(ix)(B) and it represents a proper application of, rather than does violence to, Pennsylvania's rules of statutory construction.

Next, the Court concludes that the parameters of the one-year periods referred to in § 8124(b)(1)(ix)(B) are set by the use of the word "year" therein because "year" is defined, "when used in any [Pennsylvania] statute finally enacted on or after September 1, 1937, unless the context clearly indicates otherwise, … [as] a calendar year." 1 Pa. C.S.A. § 1991 (Purdon's 1995). As a practical result, the limitation contained in § 8124(b)(1)(ix)(B) must be applied to multiple calendar year periods rather than to a single year. Consequently, the Court (a) must reject Allen's contention that only his construction of § 8124(b)(1)(ix)(B) will supply an internal reference point with which to apply the statute, (b) must reject Allen's proposed construction of § 8124(b)(1)(ix)(B), and (c) need not consider whether it would be appropriate to hold PCB to its "concession" regarding use of the calendar year for calculation purposes despite the fact that PCB did not prevail on all of the issues decided herein.

■ The Court also rejects Allen's suggestion that § 8124(b)(1)(ix)(B) perhaps is not even applicable in the context of a bankruptcy case. If Allen's proposed construction of § 8124(b)(1)(ix)(B) had been accepted by this Court, then perhaps the Court would have had reason to entertain the suggestion. However, given that said proposed construction has been rejected, the Court cannot find any evidence whatsoever, either in the language of § 8124(b)(1)(ix)(B) or otherwise, that would support Allen's suggestion.

Therefore, this Court holds that (a) the "one-year period" in § 8124(b)(1)(ix)(B) does not refer only to that single year that precedes an attempted attachment or execution on a judgment by a creditor, (b) § 8124(b)(1)(ix)(B) instead must be applied to multiple calendar year periods, and (c) § 8124(b)(1)(ix)(B) is applicable even in the context of a bankruptcy case such as the present one.

**D.** *Application of § 8124(b)(1)(ix)(B), as properly construed by this Court in the manner set forth above, to the instant matter.*

Applying § 8124(b)(1)(ix)(B) to the instant matter in accordance with the Court's con-

struction of said statute as set forth above, the Court determines that Allen may not exempt $1,414.24 in contributions that he made to his **IRA** prior to 1995, and $36,035.00 in contributions that he made to his **SEP** prior to 1995.[12] The Court's calculation follows:

(a) In 1991, Allen contributed $16,414.24 to his IRA and $-0.00- to his SEP. $1,414.24 in contributions to the **IRA** may not be exempted pursuant to § 8124(b)(1)(ix)(B).

(b) In 1992, Allen contributed $523.42 to his IRA and $13,000 to his SEP. Since both amounts are less than $15,000.00, **neither** contribution is nonexempt pursuant to § 8124(b)(1)(ix)(B).

(c) In 1993, Allen contributed $4,000.00 to his IRA and $36,035 to his SEP. $21,035.00 in contributions to the **SEP** may not be exempted pursuant to § 8124(b)(1)(ix)(B), while the entire contribution of $4,000 to the IRA is exempt.

(d) In 1994, Allen contributed $2,000.00 to his IRA and $30,000 to his SEP. $15,000.00 in contributions to the **SEP** may not be exempted pursuant to § 8124(b)(1)(ix)(B), while the entire contribution of $2,000 to the IRA is exempt.

**III.** *Whether the appreciation or income that resulted from any contribution that is found to be nonexempt under 42 Pa.C.S.A. § 8124(b)(1)(ix) is nevertheless itself exempt under that section?*

■ Allen argues that the appreciation or income that resulted from contributions that might be determined to be nonexempt pursuant to § 8124(b)(1)(ix) is nevertheless itself exempt under the same statute. Allen contends as he does because, according to Allen, (a) the language of § 8124(b)(1)(ix) is unambiguous in this regard, and (b) to hold otherwise would present an "extraordinarily difficult, if not impossible, task" in the form of

ascertaining that appreciation or income that is also not exempt. PCB, on the other hand, contends that appreciation or income that stems from nonexempt contributions is itself nonexempt. PCB asserts, *inter alia,* that its position is supported by what it also characterizes as unambiguous statutory language in this regard. For the following reasons, this Court holds that appreciation or income that resulted from contributions either determined by this Court, or stipulated by the parties, to be nonexempt is likewise nonexempt.

First, the Court rejects Allen's "plain language" argument because § 8124(b)(1)(ix) does not, via paragraphs (A)–(C) thereto, explicitly exclude from exemption only amounts that the debtor has contributed to a fund. Instead, the second sentence of subparagraph (ix) of § 8124(b)(1) states that *"[t]his subparagraph* [ie., all of § 8124(b)(1)(ix) ] *shall not apply to "* those amounts described in paragraphs (A)–(C) thereto. 42 Pa.C.S.A. § 8124(b)(1)(ix) (emphasis added). Since none of § 8124(b)(1)(ix) applies to the contributions described in paragraphs (A)–(C) thereto, neither said contributions nor the appreciation thereon and/or the income therefrom may be exempted pursuant to § 8124(b)(1)(ix). Put another way, the true impact of the second sentence in § 8124(b)(1)(ix) is twofold: (a) the fund(s) exempted pursuant to the first sentence of subparagraph (ix) of § 8124(b)(1) is (are) reduced in value for purposes of said subparagraph by the amounts described in paragraphs (A)–(C) thereto, and (b) the appreciation to, and income from, the same fund(s), which is also exempted pursuant to § 8124(b)(1)(ix), is likewise reduced to the extent that it results from the amounts described in paragraphs (A)–(C) thereto since, by virtue of the limiting words "thereon" and "therefrom," respectively, appreciation and income that may be so exempted must derive from the fund(s) that may be exempted under § 8124(b)(1)(ix). *See Id.* Therefore, the Court holds that the language of § 8124(b)(1)(ix) is unambiguous, and that it

---

12. The Court need not determine whether any of the contributions made by Allen subsequent to 1994 are nonexempt pursuant to § 8124(b)(1)(ix)(B) since the parties have already stipulated that contributions made by Allen after December 1994 may not be exempted. *See supra* pp. 135–36 (citing the parties' stipulation at para. 49).

excepts from exemption the appreciation or income that resulted from those amounts described in paragraphs (A)–(C) thereto (ie., nonexempt contributions).

Second, even if the language of § 8124(b)(1)(ix) is not clear and unambiguous vis-a-vis whether appreciation and income from nonexempt contributions may be exempted, said language is at least susceptible of the construction attributed to it by the Court herein. The significance of this observation is that the Court cannot accept Allen's position merely on the basis of the language in § 8124(b)(1)(ix), and, thus, must look elsewhere for guidance as to the intent of the Pennsylvania legislature. *See* 1 Pa.C.S.A. § 1921(c) (Purdon's 1995) ("When the words of the statute are not explicit [ie., "clear and free from all ambiguity"], the intention of the General Assembly may be ascertained by considering" factors other than the statutory language itself). Therefore, if this Court were to conclude other than as it has in the preceding paragraph, then it would need to ascertain the intention of the Pennsylvania legislature vis-a-vis this particular issue involving § 8124(b)(1)(ix) by considering, *inter alia:*

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

*Id.*

With respect to items (1)–(4) listed above, the Court simply cannot conceive of a means by which any of them might support Allen's position. Additionally, items (5) and (8) cannot provide any aid because they do not exist, and item (7) is not helpful given that the printed legislative history regarding § 8124(b)(1)(ix) is both scant and irrelevant to the instant issue. Therefore, as this Court would expect, Allen has concentrated on item (6), or the negative consequences that this Court's construction would engender. In particular, Allen attempts to convince this Court that (a) a determination of the portion of appreciation or income that may not be exempted pursuant to § 8124(b)(1)(ix) would be "an extraordinarily difficult, if not impossible, task," and, by implication, (b) the legislature could not have intended for litigating parties or the courts to have to shoulder such a difficult task. The Court cannot accept this argument, however, because a practical application of paragraphs (A)–(C) of § 8124(b)(1)(ix), even excepting for its impact on appreciation and income, is a cumbersome task. Furthermore, the Court can envision a scheme of proration whereby the task of ascertaining nonexempt appreciation and income will, at least, not be any more cumbersome than the application of the remainder of the statute. Finally, Allen engages in mere speculation when he presumes that the Pennsylvania legislature did not expect litigating parties and the Court to undertake to determine that portion of appreciation and income that could not be exempted under § 8124(b)(1)(ix). Therefore, the Court rejects Allen's argument in support of his position, and the Court also cannot conjure up any additional reason that would support a finding, that the Pennsylvania legislature intended to exclude from exemption certain contributions that have been made to a retirement fund while at the same time permitting an exemption of any appreciation and income that might result from the same contribution. As a consequence, the Court must hold that appreciation or income that resulted from contributions either determined by this Court, or stipulated by the parties, to be nonexempt under § 8124(b)(1)(ix) is likewise nonexempt.

Although the Court holds that § 8124(b)(1)(ix) excepts from exemption the appreciation or income that resulted from nonexempt contributions, the Court cannot conclude with any particularity at this time as to the amount of appreciation or income that is nonexempt in the matter herein because neither Allen nor PCB has directed

**144**

this Court's attention to evidence regarding, or even alleged as to the amount of, appreciation and/or income that pertains to Allen's IRA and SEP. Therefore, the Court shall schedule another hearing for approximately **thirty (30) days** from the date of this opinion at which time issues pertaining to the nonexemption of appreciation and income shall be addressed. In the interim, the parties, if they wish, are free, and are certainly encouraged as well, to negotiate a settlement regarding nonexempt appreciation and income that is consistent with the Court's holding herein.

### CONCLUSION

The parties, by stipulation, have removed from this Court's consideration the issue of whether contributions by Allen to his IRA and SEP prior to February 1, 1994, and subsequent to December 1994, may be deemed to be fraudulent conveyances. The Court presumes that the parties' stipulations in this regard also extend to Allen's direct transfer on February 1, 1993, of the sum then in his IRA from one custodian to another. The Court also concludes that Allen's direct transfer on April 6, 1995, of the sum then in his SEP from one custodian to another was not a fraudulent conveyance. However, the Court presently does not have sufficient information to determine, and thus will not address at this time, whether any of Allen's contributions between February 1, 1994 and December 1, 1994, constitute fraudulent conveyances such that they are nonexempt pursuant to 42 Pa.C.S.A. § 8124(b)(1)(ix)(C).

With respect to the application of 42 Pa. C.S.A. § 8124(b)(1)(ix)(B) to the instant matter, the Court makes the following conclusions:

(a) Allen's direct transfers of the sums then in his IRA and SEP from one custodian to another on, respectively, February 1, 1993, and April 6, 1995, do not constitute "contributions" for the purpose of § 8124(b)(1)(ix)(B). Therefore, the two transfers are not subject to the $15,000 limitation contained in § 8124(b)(1)(ix)(B).

(b) 42 Pa.C.S.A. § 8124(b)(1)(ix)(B) shall be applied separately to individual funds. As a consequence, in the instant matter the $15,000 annual limitation contained in § 8124(b)(1)(ix)(B) must be applied separately to Allen's contributions to his IRA and SEP.

(c) The "one-year period" in § 8124(b)(1)(ix)(B) does not refer only to that single year that precedes an attempted attachment or execution on a judgment by a creditor. Instead, § 8124(b)(1)(ix)(B) must be applied to multiple calendar year periods. Furthermore, § 8124(b)(1)(ix)(B) is applicable even in the context of a bankruptcy case such as the present one.

As a result of the above conclusions, the Court further concludes that, pursuant to § 8124(b)(1)(ix)(B), Allen may not exempt **$1,414.24** in contributions that he made to his **IRA** prior to 1995, and **$36,035.00** in contributions that he made to his **SEP** prior to 1995.

Finally, the Court holds that the appreciation or income that resulted from contributions either determined by this Court, or stipulated by the parties, to be nonexempt under § 8124(b)(1)(ix) is likewise nonexempt. However, the Court cannot conclude with any particularity at this time as to the amount of appreciation or income that may not be exempted in the matter herein because neither party has directed this Court's attention to evidence regarding, or even alleged as to the amount of, appreciation and/or income that pertains to Allen's IRA and SEP. Therefore, the Court shall schedule another hearing for approximately **thirty (30) days** from the date of this opinion at which time issues pertaining to the nonexemption of appreciation and income shall be addressed.

■ The Court's decision, as well as the parties' stipulation, that a portion of Allen's IRA and SEP may not be exempted pursuant to 11 U.S.C. § 522(b)(2) and 42 Pa.C.S.A. § 8124(b)(1)(ix) necessitates an early withdrawal of funds from either or both funds for

the benefit of Allen's bankruptcy estate.[13] Therefore, Allen, if he has not already done so, shall promptly turn over to the Chapter 7 trustee the IRA and/or SEP so that the trustee can effectuate said early withdrawal. Such an early withdrawal, of course, carries with it tax and penalty consequences. The parties have stipulated that Allen's bankruptcy estate will incur, and thus shall be liable for payment of, any such taxes and penalties. *See* Supplement to Pretrial Statement/Stipulation, Part VI, para. 50. Therefore, the Chapter 7 trustee shall specifically set aside from proceeds obtained via the early withdrawal from either the IRA and/or SEP, and then promptly forward to Allen, an amount that will enable Allen to personally satisfy in the future any tax and penalty consequences that will result from said early withdrawal.[14]

An appropriate order shall be entered.

### ORDER OF COURT

**AND NOW,** this **18th day** of **December, 1998,** upon consideration of movant's objection to respondent's exemption of his entire interest in an individual retirement account (IRA) and a simplified employee pension (SEP) pursuant to 11 U.S.C. § 522(b)(2) and 42 Pa.C.S.A. § 8124(b)(1)(ix); as well as in consideration of respondent's response to movant's objection and briefs by both parties in support of their respective positions; and in light of numerous stipulations by the parties contained in Part VI of their Pretrial Statement/Stipulation and Supplement thereto; and subsequent to notice and a hearing on the matter held on March 25, 1998; and in accordance with the accompanying memorandum opinion of this Court dated **December 18, 1998,** it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

1. Respondent's direct transfers of the sums then in his IRA and SEP from one custodian to another on, respectively, February 1, 1993, and April 6, 1995, do not constitute fraudulent conveyances so as to be excepted from exemption pursuant to § 8124(b)(1)(ix)(C); the Court's conclusion with respect to the former of the two transfers is based upon one of the parties' stipulations. Although the parties have stipulated as to whether the bulk of respondent's contributions to the two accounts constitute fraudulent conveyances, the parties have not stipulated as to whether any of respondent's contributions between February 1, 1994 and December 1, 1994, constitute fraudulent conveyances such that they are nonexempt pursuant to § 8124(b)(1)(ix)(C). Because the Court presently does not have sufficient information to rule as to whether these particular transfers constitute fraudulent conveyances, it will not address said issue at this time.

2. By virtue of the application of § 8124(b)(1)(ix)(B) to the instant matter, respondent may not exempt **$1,414.24** in contributions that he made to his **IRA** prior to 1995, and **$36,035.00** in contributions that he made to his **SEP** prior to 1995. The Court holds as it does because:

   (a) Respondent's direct transfers of the sums then in his IRA and SEP from one custodian to another on, respectively, February 1, 1993, and April 6, 1995, do not constitute "contributions" for the purpose of § 8124(b)(1)(ix)(B) and, thus, are not subject to the $15,000 limitation contained in § 8124(b)(1)(ix)(B).

   (b) The $15,000 annual limitation contained in § 8124(b)(1)(ix)(B) must be applied separately to Allen's contributions to his IRA and SEP since § 8124(b)(1)(ix)(B) shall be applied separately to individual funds.

   (c) The "one-year period" in § 8124(b)(1)(ix)(B) does not refer only to that single year that precedes an attempted attachment or execution on a judgment by a creditor. Instead,

---

13. The Court recognizes that the parties, for whatever reason, may agree to effect a withdrawal from Allen's SEP equal in amount to the total of the nonexempt contributions that Allen made to both his IRA and SEP. The Court concludes that such an arrangement is entirely permissible.

14. The Court points out, and PCB has already conceded, that PCB's objection to Allen's exemptions does not affect Allen's claimed exemption of his pension plans with Medtronic, Inc., the balance of which was $519,889.00 as of the date of Allen's bankruptcy schedules.

§ 8124(b)(1)(ix)(B) must be applied to multiple calendar year periods. Furthermore, § 8124(b)(1)(ix)(B) is applicable even in the context of a bankruptcy case such as the present one.

3. The appreciation or income that resulted from contributions either determined by this Court, or stipulated by the parties, to be nonexempt under § 8124(b)(1)(ix) is likewise nonexempt. However, the Court presently lacks sufficient information to conclude with any particularity as to the amount of appreciation or income that may not be exempted in the matter herein. Therefore, the Court shall schedule another hearing for **January 19, 1999 at 10:00 A.M. in Courtroom B, 54th Floor, USX Tower, 600 Grant Street, Pittsburgh, PA 15219,** at which time issues pertaining to the nonexemption of appreciation and income shall be addressed.

4. Because a portion of respondent's IRA and SEP may not be exempted in accordance with the preceding holdings of this Court, an early withdrawal of funds from either or both funds for the benefit of respondent's bankruptcy estate is necessary. Therefore, respondent, if he has not already done so, shall promptly turn over to the Chapter 7 trustee the IRA and/or SEP so that the trustee can effectuate said early withdrawal. However, because the parties have stipulated that respondent's bankruptcy estate will incur, and thus shall be liable for payment of, any taxes and penalties that may accompany said early withdrawal, the Chapter 7 trustee shall specifically set aside from proceeds obtained via said early withdrawal, and then promptly forward to respondent, an amount that will enable respondent to personally satisfy in the future any such tax and penalty consequences.

5. If either party chooses to appeal, then this Court will entertain a stay of its decision pending appeal, especially given that (a) the issues dealt with in this matter appear to be ones of first impression, (b) the conclusions drawn by the Court are somewhat technical, and (c)

the foregoing issues may have a broad impact upon residents of Pennsylvania.

**THEREFORE,** movant's objection to respondent's exemption is **SUSTAINED but only to the extent** that respondent may not exempt (a) those **contributions** that the parties **stipulated** respondent may not exempt, (b) an additional **$1,414.24** in contributions that he made to his **IRA** prior to 1995, and an additional **$36,035.00** in contributions that he made to his **SEP** prior to 1995, and (c) the **appreciation or income** that **resulted** from contributions either determined by this Court, or stipulated by the parties, to be **nonexempt,** which amount this Court has not yet determined.